UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL VALESKY,<br>*Plaintiff*,<br>v.<br>UNITED STATES OF AMERICA,<br>*Defendant.* | No. 25-cv-3269 (DLF) |

**MEMORANDUM OPINION**

Plaintiff Paul Valesky brought this action against three Department of Homeland Security (DHS) employees in the Superior Court of the District of Columbia alleging defamation *per se*. Compl., Dkt. 1-1. The United States removed the action to this Court certifying that the alleged misconduct fell within the scope of the DHS employees' employment. *See* 28 U.S.C. § 2679(d)(2); Westfall Certification, Dkt. 1-2. Before the Court are Valesky's Motion to Contest Westfall Certification and to Remand, Dkt. 10, Valesky's Motion for Entry of Default, Dkt. 11, and the United States' Motion to Dismiss, Dkt. 14. For the reasons that follow, the Court will deny Valesky's motions and grant the government's motion to dismiss without prejudice.

## I. BACKGROUND

Valesky worked at Procon Consulting LLC, a contractor for the Department of Homeland Security (DHS), as a Senior Design and Construction Manager. Compl. ¶¶ 6–8. He served as a liaison between Procon, DHS, and the General Services Administration (GSA) on projects at the St. Elizabeths campus in Washington, D.C., including a DHS conference-room renovation. *Id.* ¶ 9. Valesky alleges that DHS personnel sought contractor bid and proposal information from him that he believed he could not lawfully disclose. *Id.* ¶¶ 9–10. In retaliation for his refusal to provide

that information, three DHS employees—Rob Purvis, Donald Davis, and David Wolfson—allegedly made defamatory statements about Valesky's performance during a project-related meeting attended by approximately thirty DHS, GSA, and Procon employees. *Id.* ¶¶ 2–4, 10, 16. According to Valesky, the DHS employees criticized his competence, accused him of concealing information, and questioned his understanding of the project's scope. *Id.* ¶¶ 17–18, 22–24, 26. GSA subsequently removed Valesky from the project, and Procon terminated him two days later. *Id.* ¶¶ 29–30.

Valesky filed a complaint in the Superior Court of the District of Columbia on August 11, 2025, asserting one count of defamation *per se* against Purvis, Davis, and Wolfson in their individual capacities. *Id*. ¶¶ 31–50. On September 18, 2025, the United States certified that the three DHS employees were acting, or would have been acting, within the scope of their federal employment during the events alleged in the complaint. Notice of Removal ¶ 3, Dkt. 1. The United States then removed the action to this Court under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the Westfall Act), 28 U.S.C. § 2679(d)(2), and substituted itself as the defendant. Notice of Removal ¶ 4.

Three motions are pending before the Court. First, Valesky moves to contest the Westfall certification and to remand to the Superior Court of the District of Columbia or, in the alternative, moves for limited discovery and an evidentiary hearing. Dkt. 10. Second, Valesky moves for entry of default against the individual DHS employees. Dkt. 11. Third, the United States moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Dkt. 14.

## II. LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal law

empowers federal district courts to hear only certain kinds of cases, and it is "to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations and quotation marks omitted). But the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" in order to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

## III. DISCUSSION

### A. Motion to Contest Westfall Act Substitution

Valesky has not carried his burden to allege facts that, if true, would show that Purvis, Davis, and Wolfson were acting outside the scope of their employment when the alleged misconduct occurred.

The Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)). When a federal employee is sued for wrongful or negligent conduct, the Attorney General may certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim

arose." 28 U.S.C. § 2679(d)(1), (2). Upon certification, the employee is dismissed from the action, the United States is substituted as the defendant, and the action proceeds, if at all, under the Federal Tort Claims Act. *Osborn*, 549 U.S. at 230.

"A plaintiff may contest the Attorney General's scope-of-employment certification." *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009). The certification "constitute[s] prima facie evidence that the employee was acting within the scope of his employment." *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (per curiam). "To rebut the certification and obtain discovery, a plaintiff must allege sufficient facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment." *Wuterich*, 562 F.3d at 381 (citation modified). If a plaintiff meets this burden, he may obtain "limited discovery" to resolve any factual disputes over jurisdiction. *Stokes v. Cross*, 327 F.3d 1210, 1214 (D.C. Cir. 2003).

The scope of employment question is governed by the law of *respondeat superior* in the state or territory in which the alleged tort occurred—here, the District of Columbia. *Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008). Under District law, conduct falls within the scope of employment if: (1) it is of the kind the employee was employed to perform, (2) it occurs substantially within authorized time and space limits, and (3) it is actuated at least in part by a purpose to serve the employer. *Trump v. Carroll*, 292 A.3d 220, 228–29 (D.C. 2023) (en banc); *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013). Valesky's allegations do not rebut the government's certification that the DHS employees were acting within the scope of their employment.

*First*, the alleged conduct is of the kind that Purvis, Davis, and Wolfson were employed to perform. As DHS construction program and project managers, the three employees managed a

project on which Valesky worked as a contractor. Compl. ¶¶ 2–10. They allegedly made the defamatory statements during a project meeting, and their statements concerned Valesky's performance, the project's scope and costs, and other project-related matters. *Id.* ¶¶ 17–28. The alleged misconduct thus falls within the type of conduct the DHS project managers were employed to perform. *See Carroll*, 292 A.3d at 230–32; *Vrobel*, 724 F.3d at 222–24.

In applying this factor, the Court must look to "the type of act [the defendants] took that allegedly gave rise to the tort, not the wrongful character of that act." *Vrobel*, 724 F.3d at 221. Valesky's allegations of malice and retaliation concern "the *manner* in which defendants performed their work-related duties, not the *nature* of the duties themselves," and thus do not make the alleged conduct different in kind from the work the employees were employed to perform. *See Bannum, Inc. v. Samuels*, 221 F. Supp. 3d 74, 83 (D.D.C. 2016) (rejecting argument that malicious intent removes conduct from the scope of employment); *see also Council on Am. Islamic Relations*, 444 F.3d at 664 ("The appropriate question . . . is whether that telephone conversation—not the allegedly defamatory sentence—was the kind of conduct [the congressman] was employed to perform.").

Valesky alleges that the DHS project managers acted outside the scope of their employment when they requested bid and proposal information from him. *See* Compl. ¶ 10; Pl.'s Mot. to Contest Westfall Cert. 6, Dkt. 10. Although those requests may provide context for Valesky's retaliation theory, they are not the conduct giving rise to his defamation claim. The defamation claim arises from the project managers' statements about Valesky's performance, *see* Compl. ¶¶ 31–50, which were made during their management of the DHS project.

*Second*, Valesky does not meaningfully dispute that the challenged conduct occurred substantially within the authorized time and space limits of the project managers' employment.

*See Carroll*, 292 A.3d at 230 (explaining that "in many cases not all elements outlined in the Restatement framework will be subject to dispute. In those instances, a factfinder's focus will be limited to only the elements that are in dispute"). The complaint alleges that the statements were made in a meeting on August 14, 2024, involving approximately thirty DHS, GSA, and Procon personnel associated with the conference room project. Compl. ¶¶ 11, 15–16. Thus, this factor likewise weighs in favor of the government's scope of employment certification.

*Third*, the DHS project managers' conduct was "actuated, at least in part, by a purpose to serve the[ir] master." *Carroll*, 292 A.3d at 233 (citation omitted). "Determining whether the employee was, in fact, motivated by a purpose to serve their employer is an inquiry into the employee's subjective state of mind, guided by inferences about whether the employee was in fact responding to an employment-related circumstance." *Plevnik v. Sullivan*, 146 F.4th 1174, 1183 (D.C. Cir. 2025) (citation modified). An employee need not have acted solely, or even primarily, to advance their employer's interests, but such a purpose must be at least discernible and more than insignificant. *Carroll*, 292 A.3d at 235–37. Here, the project managers' statements concerned Valesky's performance on a DHS project and were made in connection with that project. *See Vrobel*, 724 F.3d at 222–23 (inferring an employer-serving purpose where a supervisor responded to prospective employers' reference requests in his official role and the requests concerned matters related to his employment). That the employees were motivated, at least in part, by a purpose to serve DHS provides additional support for the scope of employment certification.

Valesky resists this conclusion, arguing that the employees were not acting on behalf of DHS because they were motivated to retaliate against him for not disclosing bid information and to advance their post-government contracting interests. Compl. ¶ 43; Pl.'s Mot. Remand 6. But "even a partial desire to serve the master is sufficient," *Council on Am. Islamic Relations*, 444 F.3d

at 665 (emphasis omitted), and "the fact that an agent may be motivated by self-interest, or interests other than those of its principal, is not dispositive," *Klayman v. Obama*, 125 F. Supp. 3d 67, 84 (D.D.C. 2015); *see also Plevnik*, 146 F.4th at 1183 (explaining that an employer-serving purpose is possible even "if they were concurrently motivated by personal purpose or if such a personal purpose was their predominant purpose" (citation modified)). An employee's "partial purpose to serve their employer" need only be "more than an insignificant interest." *Carroll*, 292 A.3d at 237; *see also Plevnik*, 146 F.4th at 1184 ("Regardless of any personal motivations that allegedly drove the federal defendants to engage in tortious activity, there was an employer-related impetus to the employees' conduct at one time given the nature of the duties performed." (citation modified)); *Black Lives Matter D.C. v. United States*, 775 F. Supp. 3d 241, 259 (D.D.C. 2025) (concluding that alleged self-interest did not preclude a simultaneous purpose to serve the United States). As these cases demonstrate, communicating with project stakeholders about a contractor's performance on a DHS project could further DHS's project-management interests even if the DHS employees were also motivated by their own personal interests.

The facts alleged by Valesky do not establish that the employees acted outside the scope of their employment. Valesky therefore has not rebutted the Attorney General's certification, and substitution of the United States was proper. Nor is Valesky entitled to jurisdictional discovery, as he contends. *See* Pl.'s Mot. Remand 7. "[T]here is no right to even limited discovery in a Westfall Act case unless and until a plaintiff alleges sufficient facts to rebut the Government's certification." *Wuterich*, 562 F.3d at 382. Valesky fails to allege facts sufficient to overcome the government's Westfall certification, and therefore the Court will deny his request for discovery.

**B. Motion to Contest Removal**

Valesky raises several arguments as to why removal was procedurally improper, none of which has merit.

*First*, removal was timely. The Westfall Act provides that, "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment," an action pending in state court "shall be removed . . . *at any time before trial*." 28 U.S.C. § 2679(d)(2) (emphasis added); *see Wasserman v. Rodacker*, No. 06-cv-1005, 2006 WL 2331089, at *1 (D.D.C. Aug. 10, 2006) (removal based on Westfall Act certification "may be accomplished at any time before trial"). The United States certified the former defendants' conduct and removed this action on September 18, 2025, well before any possible trial date. *See* Notice of Removal ¶¶ 3–5. Removal was therefore timely under § 2679(d)(2).

*Second,* as the Superior Court record reflects, the United States filed and served the notice of removal on September 18, 2025, the same day it removed this action. Def.'s Opp'n to Pl.'s Mot. Remand at 4–5 & nn.3–4, Dkt. 15. Section 1446(d) requires a removing defendant, "[p]romptly after" filing the notice of removal in federal court, to give written notice to all adverse parties and file a copy of the notice with the clerk of the state court. *See* 28 U.S.C. § 1446(d). Valesky contends that the United States failed to comply with that requirement because the notice was not filed on the Superior Court docket until September 22. But the two-business-day delay between the submission and docketing of the notice, during which the Clerk of the Superior Court resolved an issue concerning the substituted caption, does not show a failure to comply with § 1446(d). *See Busby v. Cap. One, N.A.*, 759 F. Supp. 2d 81, 86–87 (D.D.C. 2011). Nor was the Westfall certification required to be filed in Superior Court before removal. *See* 28 U.S.C. § 2679(d)(2).

*Third*, the certification satisfied the statutory predicate for removal under § 2679(d)(2). The certification expressly named Purvis, Davis, and Wolfson and certified that each was acting within the scope of his federal employment during the incidents alleged in the complaint. Westfall Certification, Dkt. 1-2, at 1; Compl. ¶¶ 2–4. To the extent Valesky contends that the certification was conclusory or unsupported, neither contention establishes a procedural defect in removal. *See Osborn*, 549 U.S. at 241–43. As discussed above, Valesky's allegations, taken as true, do not establish that the DHS employees acted outside the scope of their employment.

*Fourth*, Valesky need not have pleaded a federal claim or established diversity jurisdiction for removal to be proper. The Westfall Act provides an independent basis for removal, and the certification "conclusively establish[es] the scope-of-employment issue for purposes of removal." 28 U.S.C. § 2679(d)(2); *see Osborn*, 549 U.S. at 241–43.

**C. Motion for Entry of Default**

The Court will also deny Valesky's motion for entry of default against Purvis, Davis, and Wolfson. Federal Rule of Civil Procedure 55(a) permits entry of default against a "party" who has failed to plead or otherwise defend against a claim. "Upon certification, the employee[s] [are] dismissed from the action and the United States is substituted as defendant." *De Martinez v. Lamagno*, 515 U.S. 417, 420 (1995). At the time Valesky filed his motion for entry of default against Purvis, Davis, and Wolfson, they were no longer parties against whom default could be entered. Nor had any default accrued before substitution. Before September 18, 2025, Valesky had not served the United States as required for an individual-capacity suit against federal employees, so the employees' time to answer had not begun to run. D.C. Super. Ct. Civ. R. 4(i)(1), (3), 12(a)(3); *see Kaul v. Fed'n of State Med. Bds.*, No. 19-cv-3050, 2021 WL 1209211, at *8

(D.D.C. Mar. 31, 2021) (concluding no obligation to answer arose where a plaintiff failed to serve the United States as required by Rule 4(i)).

**D. Motion to Dismiss**

The Court lacks subject matter jurisdiction over this defamation action because the United States is immune from suit.

Where, as here, the United States has been properly substituted as the defendant, the claim proceeds exclusively under the FTCA. *See* 28 U.S.C. § 2679(b)(1); *Wuterich*, 562 F.3d at 380 (explaining that substitution converts state tort action into an FTCA suit subject to all statutory exceptions). If an FTCA exception applies, the certification may "altogether bar" the plaintiff's case. *Wuterich*, 562 F.3d at 380. "Sovereign immunity is jurisdictional in nature" and, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Although the FTCA provides a limited waiver for certain tort claims against the United States arising from the conduct of federal employees, 28 U.S.C. §§ 1346(b)(1), 2674, it preserves sovereign immunity for claims "arising out of . . . libel [or] slander," *id.* § 2680(h). Thus, when the United States is substituted for a federal employee, a claim arising out of defamation, libel, or slander is barred by sovereign immunity. *See Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997); *Kugel v. United States*, 947 F.2d 1504, 1504–05 (D.C. Cir. 1991).

Valesky's sole claim is for defamation *per se* based on statements concerning his professional competence, honesty, and performance. Compl. ¶¶ 31–50. That claim falls within § 2680(h)'s exclusion for claims arising out of libel or slander. *See Gardner v. United States*, 213 F.3d 735, 737 n.1 (D.C. Cir. 2000) (noting that a defamation claim against the United States is barred because the FTCA prohibits libel and slander suits); *Bobulinski v. Goldman*, No. 24-cv-

974, 2025 WL 1707696, at *4 (D.D.C. June 18, 2025) (upholding Westfall substitution and applying sovereign immunity in defamation case). The Court will therefore grant the United States' motion to dismiss for lack of subject matter jurisdiction and dismiss the action without prejudice.

**CONCLUSION**

For the foregoing reasons, the Court will deny Valesky's Motion to Contest Westfall Certification and to Remand, Dkt. 10, and his Motion for Entry of Default, Dkt. 11. The Court will grant the United States' Motion to Dismiss, Dkt. 14, and dismiss the action without prejudice. A separate order consistent with this decision accompanies this memorandum opinion.

Dabney L. Friedrich

DABNEY L. FRIEDRICH
United States District Judge

September 29, 2026